### NEGLIGENCE IN WALKING ON A RAILWAY TRACK.

[*Circuit Court of Summit County.*]

ERIE RAILROAD CO. ET AL V. KATE MCCORMICK, ADMINISTRATRIX.

Decided, April Term, 1902.

*Negligence—As Between Railway Engineer and Track-Walker—Not Fellow Servants—Speed Ordinance Admissible as Evidence, when —Recovery for Negligence of Engineer Notwithstanding Contributory Negligence of Deceased—Excessive Damages.*

1. In an action against a railway company for wrongful death, an ordinance limiting the speed of trains within the municipal limits is admissible when the negligence charged is that the train which struck the decedent was being run at such a rate of speed as to itself constitute negligence.
2. A track-walker when out upon the road alone is not a fellow servant with the engineer of an approaching train, notwithstanding he may have power to flag trains when necessary.
3. Such a track-walker who goes upon a railway bridge over which trains habitually run at a high rate of speed, knowing there is a train long overdue and without looking for its approach, is guilty of contributory negligence, notwithstanding a municipal ordinance limits the speed of trains at that point to six miles an hour.
4. But where an engineer who sees such track-walker 800 feet distant, makes no proper effort to slacken the speed of the train and the man is struck and killed, the company is liable for his death, notwithstanding his own contributory negligence, provided he could not have escaped after discovering his danger.
5. A verdict of $5,200 is excessive for wrongful death of a track-walker earning $1.25 per day. Amount reduced to $4,000.

MARVIN, J.; HALE, J., and CALDWELL, J., concur.

Error to the Court of Common Pleas of Summit County.

The case grew out of this state of facts: On the morning of Christmas day, December 25, 1897, James Thomas McCormick

was killed by being struck by a train of the Erie Railroad Company, crossing a trestle in the northeasterly part of this city (Akron). Katie McCormick was appointed administratrix of the estate of the deceased Thomas, and brings suit under the statute authorizing such proceeding to be brought for the benefit of those (the next of kin) who have a right. The trial resulted in a verdict and judgment for the plaintiff below, and motion for a new trial was made and overruled, and error is brought here to reverse that judgment. A bill of exceptions is filed here containing all the evidence introduced in the court below.

It is complained on the part of the plaintiff in error that the petition fails to state facts sufficient to constitute a cause of action. Without stopping to read from the petition, we hold that the petition does state sufficient facts to constitute a cause of action against the railroad company. Both companies were sued, the Erie and the Nypano, the Erie being a lessee of the other company.

The petition complains of negligence on the part of the railroad company in that it was running its train, which caused the death of McCormick, at a negligent and improper rate of speed. It complains that there was negligence in not giving proper alarm by the ringing of a bell and the sounding of a whistle. It complains that there was negligence in not checking the speed of or stopping the train after it was known, or ought to have been known, that the decedent was in a place of danger, where, if the train could not be checked or stopped, he would be killed or seriously injured. One of the charges of negligence, then, as has already been stated, is that the train was being run at a rate of speed too high and such as made it negligence to so run the train.

There was offered in evidence, on the part of the plaintiff below, an ordinance of this city, which provides that trains shall not run within the city limits at a greater rate of speed than six miles an hour. Objection was made to the introduction of that, and complaint is made that the court allowed that ordinance to be introduced.

It is urged that on the whole evidence it is perfectly plain that the train habitually ran over that part of the road at about

the rate of speed that it was running on the occasion òf the accident. The train, as a matter of fact, was running, at the time of this accident, probably at least at forty miles an hour. It is said that it is perfectly clear that this was the usual rate of speed at that place, and that the decedent knew it to be so. But remmebering that one of the charges of negligence is, without reference to what excuse the company had .as against the decedent, or any one representing him, the running at a higher rate of speed than prudence would allow, running at such a rate as made it negligence, the question as to whether the ordinance should be introduced must be governed by whether it bears upon that question.

The court allowed the ordinance to be introduced in evidence, and on page 144 of the bill the court explains to the jury just what weight should be given to the evidence, or rather it explains the question upon which the evidence was admissible, and in so charging the jury quoted almost exactly the language of Judge Johnson in the case of *Meek* v. *Pennsylvania Co.*, 38 Ohio St., 632, and that language is quoted with approval by our Supreme Court in the case of *Davis* v. *Guarnieri*, 45 Ohio St., 470, 485. There was no error in the admission of that ordinance as evidence. And the court, in its charge, properly instructed the jury as to what issue, and only what, that evidence was to be addressed.

There were a number of requests made by the defendant below for charges to be made to the jury. All of the requests made prior to the giving of the charge were given, except the first two.

The first reads—

"If you find that on the day of this injury to McCormick while he was on duty on the defendant's road as track walker, he had no superior with him, but was alone and sole power, control and direction as to the manner and time of pursuing his duties in his then branch and department of service, and the power of flagging trains when necessity required it, then I say to you for that time, and in the operation of train 5 (which was the train causing the death of McCormick) the engineer of said train was a fellow servant with. him, and for the

negligence of such engineer the plaintiff can not recover in this case, and you should find for the defendants.''

That was refused, and properly refused under Section 3365-22, Revised Statutes. Said sub-section reads:

''That in all actions against the railroad company for personal injury to, or death resulting from personal injury, of any person while in the employ of such company, arising from the negligence of such company or any of its officers or employes, it shall be held in addition to the liability now existing by law, that every person in the employ of such company, actually having power or authority to direct or control any other employe of such company, is not the fellow servant, but superior of such other employe; also that every person in the employ of such company having charge or control of employes in any separate branch or department, shall be held to be the superior and not fellow servant of employes in any other branch or department who have no power to direct or control in the branch or department in which they are employed.''

These men were not in the same department of service. McCormick had nobody under him; the engineer did have somebody, the fireman, under him. It is clear the court properly refused to give that charge.

The second is:

''If you find that at and before the twenty-fifth day of December, 1897, the day of McCormick's injury, he had knowledge or means of knowing that train 5 on defendant's road had a schedule time between Kent and Akron of thirty-three and one-third miles per hour, and that said train was habitually run over this division, including the bridge in question, at the rate of thirty-three to forty or more miles per hour, then it became McCormick's duties in discharging his duties as track walker to take notice of such speed of said train, and to act and govern himself according to such rate of speed as said train was actually being run, taking such care of the road and of himself, in going upon, or refraining from attempting to pass over said bridge, as such circumstances in relation to such fast rate of speed required, and he would have no right to rely on the rate of speed provided for in the city ordinances admitted in evidence, and in such case I say to you you should disregard the ordinance and the fact that the bridge was within the city limits.''

That was refused. The court, in refusing that, said, except for the last clause it would probably be proper to give it. But, as has already been said, as to the admissibility of the ordinance on objection made, the court properly admitted it, and without stopping to read what the court said, the court, in its charge to the jury, did properly instruct them as to the effect of that ordinance, and there was no error in refusing to give the request.

The evidence shows that McCormick was what is called a track walker on the line of the Erie road between Tallmadge and Akron; that he was accustomed to walking over this part of the road daily, perhaps more frequently than once a day; that he was entirely familiar with the manner in which the trains were run; that trains habitually ran without regard to the ordinance of the city over this part of the road at a rate of speed in the neighborhood of forty miles an hour; he also knew—it was his business to know—as shown by the rules, he must keep track of the trains—it was his business on this occasion to know that the train was late; it was, as a matter of fact, two or three minutes more than two hours late; it was his business to know that. Doubtless, he did know it. So that he went on to this bridge, for he was walking from toward Tallmadge to Akron, came to the bridge at the east end of it and was walking across toward the west end, and he either knew or it was his business to know that that train was liable to come at any time. The evidence shows that he was muffled up—his ears were probably muffled; it was a cold morning, as already said, in December; the evidence makes it probable, though not certain, that the bell rang and the whistle was sounded at the Tallmadge road, something like a thousand feet east of this bridge before it reached that road, perhaps 1,500 feet before it reached the road that the whistle blew. This man may not have heard it. It is possible that it did not blow, but the probabilities are very strong that it did, and it seems certain that the man who knew that that train was behind time, whose business it was to know it, and did know it was liable to come at any time, going on to that bridge without unmuffling his ears and trying to ascer-

tain in some way whether that train was coming, was guilty of negligence. We think that the evidence is clear that McCormick was negligent at the time that he went onto that bridge, so that if he is entitled to recover it is in spite of that proposition of law that he who contributes by his own negligence to an injury is not entitled to recover for such injury.

What was known about it by the engineer running that train, and did he do that which he ought to have done after he knew, or, if he had exercised reasonable care, ought to have known that this man was in this place of danger? He says that something like six or eight hundred feet, six hundred feet, at any rate, before the place where the man was struck, he saw him; indeed, it must have been further than that, well up toward the Tallmadge road, he saw McCormick; he says that he didn't know whether he was on the bridge or not. First, he says he was not, but later on he says he did not know whether he was on the bridge or not. He says that he saw him; he saw him with such distinctiveness that he saw there was a wrench over his shoulder; it was not snowing; he says it had been snowing, but it was not then snowing; he saw this man on the bridge; he must have been on the bridge or on the approach at the west end; he was killed at a point further west than the west abutment of the bridge; he was killed within twelve or fifteen feet of the west end of the approach. He says that he did not thereafter see him, and mentions snow as one of the reasons, but later on he says it was not snowing. The fireman says by reason of there being snow on the ground it flew up around the engine, but the engineer says the wind was blowing from the west, and that the smoke trailed down over the train so that he did not see him when they came round the curve. Possibly he meant to say, although he does not distinctly say so, that the front end of the' engine would come within the line of vision between him sitting on the right hand of the engine and McCormick; but he says the smoke trailed down over the engine and over where he was so as to interfere with his seeing. He says, however, that he sounded the whistle, put on the brake. He does not, in his direct testimony, say

that he put on an emergency brake, but he does say later on in his testimony that he did all in his power to stop the train. The fireman says nothing about that, and he nowhere says that there was any checking in the speed of the train at all. If the engineer did not understand that McCormick was in a place of danger when he saw him it is a little difficult to understand why he thought it was necessary to do all in his power to stop that train or check it. The two young men, who were skating nearby, who saw the train, testify about this accident. One of them, and only one of them, says that there was no checking of the speed of the train. The other, on cross-examination, was asked if he could tell within fifty feet when he saw it whether it was so checked. He said he thought he could, but he didn't say anything about whether the speed of the train was checked, but the other man, whose name I don't recall, says there was no checking at all. It has already been said the fireman does not say there was, and nobody says there was except the engineer. The result was that the train was not sufficiently checked, at least, to save this man. The evidence shows, and especially by one witness, who was formerly a conductor and perfectly familiar with that line, that at that place and at that time the speed of the train could have been very materially reduced in the distance between the place where the engineer saw the deceased and the place where the engine struck him.

The court instructed the jury properly, that if McCormick was in fault, if he was negligent, no recovery could be had here, unless the engineer could have saved McCormick by exercising that prudence which, under the circumstances, it was his duty to exercise; that prudence which an ordinary prudent man would exercise under similar circumstances. The court charged the jury properly on that.

The jury must have found, for we think it is certain the jury found McCormick was negligent, that the engineer is mistaken when he says he put on all the appliances he could to check the speed. If he did not think the man was in danger there would be no reason why he should put on all the appliances. We think he did see that the man was in danger,

but he reasoned with himself he probably would get out of the way, and he did not exercise the prudence that he ought; at least, that it is not clear that the jury was wrong in finding that.

Without commenting upon the other errors complained of, although each one of them has been carefully considered, we find no error (a majority of the court only hold as the opinion is being announced) except in the question of the measure of damages.

Of course, it is difficult to fix a proper amount of damages, but the damages awarded here are such that the interest on the amount of money awarded here as damages would practically amount to as much as this man was earning. The damages were $5,200. He was earning only $1.25 a day; and we think the jury must have intended to give such an amount that the interest on it would have amounted to his wages, or practically his wages, overlooking the fact that if he kept on earning wages to the end of his life, the whole amount would then be gone, whereas, if he put out the money he would still have the capital left, and overlooking the true measure of damages, that it should be a compensation for the pecuniary loss. It is said by some authorities—it is said in Hill on Damages, and some cases are cited in support of the proposition that we take into account, of course, nothing for solace, nothing for wounded feelings, but the care the parent might exercise for the benefit of his children, may be considered, but taking that into account, and being most liberal, we think the jury awarded damages greater than should have been awarded. In a case where a man was earning $1.25 a day, there could not have been such a pecuniary loss as would have required $5,200 to compensate, and unless the plaintiff below is prepared to remit $1,200 from this amount, and accept $4,000, the case will be reversed. Otherwise it will be affirmed.

*Tibbals & Frank,* for plaintiff in error.

*E. F. Voris* and *A. J. Wilhelm,* for defendant in error.